Good morning, your honor. If it pleases the court, my name is Don Chadwick and I represent Rick Tarantino in this case. This is a case where there was a vehicle taken from the driveway of a Pele's home. The vehicle was a bright and shiny, fully restored 1952 Ford pickup truck. The vehicle was taken as a matter of law by Judge Patel. Defendants were not authorized to abate the vehicle or to take it. The... Well, you say they were not authorized to do it. There was an abatement hearing within that. I'm sorry, I didn't hear. There was an abatement hearing? No, there was no hearing. Oh, there was an abatement proceeding at which your client declined to have a hearing or attend. No, this was after the fact in the appeal. The abatement didn't come before the seizure? In the memorandum. Pardon me? In the memorandum. Judge Patel, in her memorandum, stated that as a matter of law, defendants were not authorized to abate plaintiff's vehicle. That's at page 84, line... No, no, but I'm trying to get the facts. There was an invitation to an abatement procedure, and your client did not attend or request a hearing. So there was an abatement, which Judge Patel later found was invalid. The abatement didn't the notice didn't describe anything that he had on his property, a vehicle that was abandoned, wrecked, dismantled. I didn't see that in the briefs. Did you raise that in the briefs? You've got three letters, as I remember, two or three letters. Did you raise that notice that the notices in those letters did not give a sufficient notice and they were defective? Yes. You raised that in your briefs? Yes, we did. Okay. And it was decided in court that as a matter of law that they were not authorized to be abated. I think Judge Panetti is talking about did you raise it in your brief on appeal? On appeal to us? Yes, I believe it is in there. I didn't see the issue that the abatement proceedings were invalid because of failure of proper notice. I don't think I read that. Now, maybe I missed it. There was improper notice that didn't describe any vehicles that he had. I realize that. I'm saying was it in your blue brief? Yes. It may have been in the new brief. If it was raised by the defense, it would be answered in the brief, the reply brief. What's your basic argument on the Fourth Amendment? Well, the basis of our argument is that the immunities, qualified immunity and good faith, were not raised in the motions for summary judgment, and now they're being raised for the first time on appeal. These were raised sui sponte by Judge Patel in her argument and discussion, and we had no opportunity to discuss or argue those in the court below in the motions for summary judgment. Okay. And those are your only arguments as to those two issues, that they're procedurally defective. You don't argue the merits of those two issues. Should they have been properly raised? If they had. Yes, we do. The site, let's see, the Spitz case on page 2, Roman number, small letter 2, in the table of authorities cites a Spitz case. No, not with the table of authorities. Where in your brief do you argue the merits of either of those two issues? I know that you contend in your brief that the issues are procedurally defective, that they were not properly raised below. Yes. But that's different from arguing the merits of the issues. Well, the merits would go to the argument on page 11 and 12 in the cites case, which states that the automobile exception requires certain exigent circumstances before it can apply. And this case didn't involve any exigent circumstances to pick up a vehicle without first having a warrant. On page 11, what you're describing is what the district court did. That's a Miranda case. In the Spitz cases on page 12, warrant requirement applies to seizures for purposes of forfeiture. And in this case, they not only took the vehicle, but they kept them after they took them. And this was repeated. Well, let's go back. You started, though, with an abatement proceeding. And there was a statute that provided for the abatement of these vehicles. Now we can talk about the statute later. But if there was an abatement procedure, do you still think you need a warrant to pick it up after there's been an order to abate that particular violation of the ordinance? There was no order to abate that particular item. The item was never described as such. You never raised that here. For all, for that matter, the notice could have gone out to everybody in the city. Again, I tell you, I'm going to go back and reread your brief. I don't find that argument made in your brief. I may be wrong. I'll tell you I may be wrong. But I don't find that argument being made. You make the argument on page 11 and 12 about requiring a warrant. But we're going back to the abatement procedure. We've never resolved that issue. The abatement procedure took place under an ordinance. The question is whether validity of the ordinance. Fine. Well, in this case, it was the validity of the ordinance was established not on a warrant proceeding where a judge was contacted, but in a district court and a summary judgment motion. I don't even understand. It was trying to make right what was done first. And it wasn't done in the lower court. There was no lower court. The only thing, there was a hearing to determine when you were going to get rid of the vehicle. And there was no vehicle that was described to get rid of. I reserve the rest of my time. Thank you, counsel.  May it please the Court. I'm Mark Kuhn, appearing on behalf of Appellees Saputa, Ace, Hunley, Champaign, Harrison, and Spencer. Your Honor, the essential component of this case is that Mr. Tarantino had no reasonable expectation of privacy. Well, that gets you into the property. That doesn't authorize the seizure of the vehicle. That's correct, Your Honor. But this case is past the juncture where the authorization for the abatement is at issue. The court held that the city settled out of the case. The court held that the abatement ordinance that was utilized was unclear, and she disagreed with the city's position that the term inoperable allowed vehicles to be seized that were unlawful but mechanically could operate. However, the ---- And she saved you on the theory of qualified immunity by saying that it was reasonable for somebody to read an ordinance that's about abandoned property. And the ordinance says when you store, leave, any licensed or unlicensed vehicle which is inoperative. Yes. And you read that as meaning any unlicensed vehicle. The city ---- You say any fact that it's not registered makes it inoperative. Yes, Your Honor. And you think that's a reasonable reading of that ordinance? It says if it's unlicensed and inoperative, it only has to be unlicensed. I believe that that was a reasonable interpretation of the ordinance. And I ---- By people who can read English? Yes, Your Honor. I think even the ---- even the appellant asserted that the ordinance was vague. And ---- Well, he said it was vague, and the district court said, no, it's not. It's very clear. Well, whether you look at it as being vague or disagreeing that it allows the city to rightfully seize vehicles that were legally inoperable but mechanically inoperable, the issue before this court is whether the officers who were executing or who were participating in the seizure were unreasonable in concluding that it was okay for the city to abate the vehicles. We have objective tests for officers. You know, it doesn't matter whether the officers subjectively thought something. What matters is what an objective or a reasonable person would think. Right. When the ordinance says whether it's licensed or unlicensed, it has to be inoperative. And the city's position is as long as it is inoperative, as long as it has no license, it is necessarily inoperative. That was the city's position, Your Honor. Well, I wouldn't know. We'll have to see. But, you know, I think the district judge really engaged in a number of convoluted efforts because she first thought it was very clear and then thought, well, maybe it's not so clear. And her reason was that the plaintiff said it was vague. So despite the fact that she thought it was clear, it must be unclear because the plaintiff disagreed with her. Well, Your Honor, if I could stress that, you know, the qualified immunity defense is extremely broad, and I think it has been described by the courts as being generously applied to protect all but the most unreasonable acts. And I don't think that it was unreasonable for police officers who were standing by during the abatement of vehicles to necessarily and obviously conclude that this was a misapplication of the city's abatement ordinance. Under this ---- I think you may have better hope on the theory that that was not briefed by your opponent. Do you ---- I was just ---- Your Honor, I think there were perhaps two sentences in the entire brief submitted by the appellant that mentioned whether or not the qualified immunity defense applied in this case. It certainly was not directly addressed, nor was there any case law offered to this court or any direct references to Judge Patel's order discussing qualified immunity. Where the appellant went was that it was unreasonable for the officers to believe that these cars could be abated whether or not the ordinance was being properly applied because of the absence of a warrant. And to that our response is, and has been in our brief, that under this Court's decision in Schneider v. County of San Diego, the law allows warrantless abatements of vehicles under a nuisance ordinance where those vehicles are located outside of the curtilage and in the equivalent of the open fields. And in the Oliver decision that we cited to this Court, the Supreme Court stated to be in an open field, an article, it doesn't ---- the location doesn't have to be open. It doesn't necessarily even have to be in a field. It needs to be in a location that is not occupied and to which the owner has no reasonable expectation of privacy. And we believe that that clearly was the case as respects to this seizure. The driveway at issue has no fences. It has no signposts. It's open for pedestrians, for motorists to see. Motorists can pull into the driveway and turn around. Pedestrians, depending upon the direction of travel, would necessarily cross over the driveway to get to the front door. Meanwhile, they could touch the automobiles, look into the automobiles. And as Judge Patel indicated, these vehicles were on display for all the world to see. So absent any expectation or any reasonable expectation of privacy, we believe that the Schneider decision controls and that even though a warrant wasn't warrant, even though the officers did not have a warrant, that the abatement was not precluded by the Fourth Amendment, we've also cited to this Court the decision the Supreme Court ---- Kennedy. That depends on the validity of the ordinance, doesn't it? I don't believe it does, Your Honor. The validity of the ordinance ---- Whether the ordinance authorizes the seizure. Well, it's a two-step process. One is assuming that the ordinance was invalidly executed and the officers, however reasonable, believed that what they were doing was appropriate. Then you get to the ---- Well, that qualified immunity. Yes. Yes. But I thought you were now arguing that there was a right to seize the vehicle. I am arguing that, Your Honor. Even if the ordinance didn't authorize it. That's correct. Because the officers, it was not unreasonable for them ---- It has qualified immunity. Correct. I mean, it is a multi-step process to get to that point. But I think that, again, it was not unreasonable for these officers to interpret the ordinance in a way different than Judge Patel otherwise used. And I know that the city is no longer in the case. So although the Court did find that the city was inappropriate in the way that it followed up on this ordinance, this case shouldn't be measured by what the city knew, but by what the officers ---- Let me ask you a question since we've only got less than two minutes. Yes. Another issue is on the good faith defense. Are you representing the towing company? I am not, Your Honor. Your Honor, I was going to indicate that it's probably time for me to sit down. It probably is, but you've left them a minute and 45 seconds. Okay. I will take my seat. Thank you, Your Honor. May it please the Court. My name is Bill Marginal. Is there something terribly persuasive that you can do in a minute and 45? It's excellent. Yes. Your Honor, this was joint motions for summary judgment. There were two motions. There was a motion by the plaintiff and there was a motion by the defendants. The issue of whether or not the towing companies had immunity, excuse me, was squarely an issue from the beginning. That was the argument. The good faith argument was presented in depth in the opposition to the motion for summary judgment. The argument in ---- I'm sorry. Did you have a question? On the good faith, you probably haven't seen it because we haven't, but we've issued an opinion on the 11th, Clement v. J.E. Service, that addresses that good faith argument on towing companies. And it was ---- we couldn't find it this morning yet, but it will be posted I think at 10 o'clock today. Darn. That's what it is. Darn. We dismissed it. Dismissed it. Anyway, that issue ostensibly was raised in that case. But I said, oh, we haven't seen the opinion yet. Well, I think the question that that leaves us with is that there was no established good faith defense until 20 minutes ago. 20 minutes ago. Yeah. And if you raised the good faith defense and the judge ruled for you, which is your version, then you're right because the judge was prescient. If you didn't raise it and the judge raised it sua sponte, which is another possibility, and the plaintiffs did not have an opportunity to respond to the argument because it was raised for the first time in the judge's ruling, then it would seem to me that the proper remedy would be to remand and let the judge, let the plaintiffs make their argument to the district judge, at which time you will likely prevail. But at least the plaintiffs will have had an opportunity to argue it. Their position is that they didn't have an opportunity to argue it in the district court. Now, you say it was raised many times. Your Honor. As far as I can tell, it was the word was used in connection with a different part of a different defense. And you used quotes that happened to contain the word good faith. Did you assert an affirmative good faith defense? Yes, we did. We affirmed it as the seventh affirmative defense on page 13 of the excerpt for the record. And our answer was that our actions were taken in good faith for a business purpose. And we asserted a good faith defense. And in your summary judgment? In the opposition to the summary judgment, if you will read my opposition, which is part of the supplemental excerpt for the record that I submitted, and then you will compare that to the language in Judge Patel's opinion, you will find down to my reference that the Northern District opinion was written by Judge Breyer, that she used the language from my opposition extensively. That opposition was given to plaintiffs, plaintiffs had an opportunity to rebut and argue against that in their reply. If you compare the language of the opposition in the motion for summary judgment and the order that is being appealed from, both granted our motion and to my plaintiffs' motion. And the papers in support of your motion for summary judgment? In the papers, that would be in our reply. And your reply to the ---- Correct. And they had their opportunity to address our issues that were in the opposition to their motion. Okay. Yours is Breyerich's opposition to Plaintiff's motion, for sure? Correct. If you will review that and then compare the language of my opposition to the language in Judge Patel's opinion, you will find some similarities. Okay. The issue was presented to the parties and he had adequate opportunity to brief it. I missed the name Breyer? Breyerich. Yes. Breyerich, yes. B-r-y-r-i-c-h. Yes. Page 3 of 9 of the opposition to Plaintiff's motion for summary judgment. And then briefly on the request for additional discovery, which they raised on a procedural issue, they asked for discovery to be opened after the hearing on the motion for summary judgment. So there was not a Rule 56-F request. I'm still not clear about one thing. You say you didn't raise it in support of your motion for summary judgment. In my motion for summary judgment, I argued that we were entitled to qualified immunity just as a police actor would be, because even though we are a private company, that we are acting just as an officer and we would be entitled to the same protection. I asked for an extension of the law. However, I did not, unfortunately, and you can blame me for this, cite the Franklin case directly and find the Franklin case until after I've. So I argued for the extension of the qualified immunity in my brief. I did not use the term good faith. And I used that in when I found the Franklin case, and I used that extensively in the opposition to the Plaintiff's motion for summary judgment. Thank you. A couple of things I'd like to mention is that the citing that he just referred to was State law rather than the Federal law in the case, and that there was no good faith law, which, of course, cannot invalidate the Constitution of the United States or the Bill of Rights. There is one place that good faith was mentioned in an answer to the complaint, good faith business practices, which had nothing to do with the defense of good faith. That's the only place that good faith was ever mentioned. And also, I'd like to remind the Court that in Snyder, the Fourth Amendment was not raised by Snyder, and the case wasn't decided on the Fourth Amendment, and it was remanded back to the lower court to decide the Fourth Amendment issue with regard to permanent retention of the property afterwards and or disruption of it. And Snyder won that case, and it was back here on appeal to determine the interest that was due on the judgment. And so it was decided on the Fourth Amendment, but it was a later case. With regard to the open field doctrine that's attempted to be used in following the case of Oliver, Oliver was a case in the 6th District, I believe, and it had to do with marijuana in a field a mile or so away from a trailer home, and it was surrounded by a grove of trees, and this was considered an open field seizure of the marijuana. And this, I agree, should be an open field. The curtilage, as we understand it from law school, was an area around the home. If it's in a court, the word comes from the court, from the courtyard. Curtilage means the area around the home, as we learned it from the English common law, was the area where an arrow could be shot from the home to that distance. We've come a long way since then. Yeah, we have. And anything within the curtilage couldn't be entered without the consent of the owner, whether it be the king or his men or otherwise, and without authority. Now he's trying to place the curtilage at the doorstep rather than on the property surrounding it, and I don't believe that Oliver qualifies for that kind of characteristic. Thank you, Your Honor. Thank you, Counsel.
judges: Reinhardt, Brunetti, Fisher